IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE MARIE BOGUCKI, | ) | CASE NO. 1:22-CV-70 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff, Diane Marie Bogucki ("Plaintiff" or "Bogucki"), challenges the final decision of

Defendant, Kilolo Kijakazi,[1] Commissioner of Social Security ("Commissioner"), denying her application

for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§

416(i), 423, and 1381 *et seq*. ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This

case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under

Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate

Judge recommends that the Commissioner's final decision be VACATED and REMANDED for further

proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

In September 2019, Bogucki filed an application for SSI alleging a disability onset date of January

1, 1999, and claiming she was disabled due to her mental health.  Transcript ("Tr.") at 146, 169.  The

application was denied initially and upon reconsideration, and Bogucki requested a hearing before an

administrative law judge ("ALJ").  Tr. 100.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.

1

On November 16, 2020, an ALJ held a hearing, during which Bogucki, represented by counsel, and an impartial vocational expert ("VE") testified.  Tr. 34-58.  At the hearing, Bogucki amended her alleged onset date to September 13, 2019.  Tr. 16, 37.  On December 12, 2020, the ALJ issued a written decision finding that Bogucki was not disabled.  Tr. 16-28.  The ALJ's decision became final on December 3, 2021, when the Appeals Council declined further review.  Tr. 1-3.

On January 13, 2022, Bogucki filed her Complaint to challenge the Commissioner's final decision. Doc. No. 1.  The parties have completed briefing in this case.  Doc. Nos. 7, 9, 10.  Bogucki asserts the following assignments of error:

> 1. The appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, the decision in this case by an ALJ who derived his authority from Andrew Saul was constitutionally defective.
>
> 2. The ALJ erred when he failed to find that Bogucki satisfied the criteria of Listing 8.05.
>
> 3. The ALJ erred when he failed to find that Bogucki's psychological symptoms would preclude her from engaging in substantial gainful activity on a full-time and sustained basis.
>
> 4. The ALJ erred when he failed to find persuasive the opinion of the treating physician and incorporate the stated limitations in the RFC.
>
> 5. The ALJ erred when he failed to properly consider Bogucki's symptoms in accordance with Social Security Ruling 16-3p.

Doc. No. 7, p. 1.

## II. EVIDENCE

**A.    Personal and Vocational Evidence**

Bogucki was born in 1971 and was 48 years old on the date she filed her application.  Tr. 27.  She has prior work as a fast food worker and hotel desk clerk/housekeeper/groundskeeper.  Tr. 37.

**B.    Relevant Medical Evidence[2]**

On December 10, 2018, Bogucki saw licensed social worker Debra Johnson for treatment.  Tr.

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' briefs.

245.  She reported anxiety, crying, and feeling energetic and paranoid.  Tr. 245.  She stated that she could not do anything for days and that she gets anxious and antsy, shakes and paces the floor, has heart palpitations, feels scared, has suspicions of being harmed, hallucinates, can't sleep and has nightmares, and is compelled to clean.  Tr. 255.  Upon mental status exam she had impaired attention and concentration, average intelligence, and moderate insight and judgment.  Tr. 249.  Johnson wrote that Bogucki's reported symptoms were suggestive of schizoaffective disorder.  Tr. 255.

On December 26, 2018, Bogucki saw internist Dr. Khaled Mahlies for a follow-up visit.  Tr. 283. She carried diagnoses of hypertension, vitamin D deficiency, bipolar I disorder, obesity, and hypertriglyceridemia.  Tr. 283.  Upon exam she had a normal gait, trace edema in her bilateral lower extremities, and a normal mood and affect.  Tr. 284.

On January 18, 2019, Bogucki told her counselor that her primary problem was increased alcohol use.  Tr. 232.  She was concerned about her symptoms: isolation, crying spells, intense sadness, lack of energy, hopelessness, worry, impulsiveness, mood shifts, and sleep deprivation.  Tr. 242.  Upon exam she was well groomed, depressed and anxious, tearful throughout her session, and she had impaired memory.  Tr. 237, 242.

On February 22, 2019, Bogucki had a psychiatric evaluation.  Tr. 259.  Upon exam she had no cognitive impairment, intact attention and concentration, and intact memory.  Tr. 261.  At an appointment on March 22 she also had intact memory, attention, and concentration. Tr. 268

On June 27, 2019, Bogucki followed up with Dr. Mahlies and had a normal gait, mood, and affect.  Tr. 279.  Her skin was pale with slightly scaly bilateral fingers and Dr. Mahlies diagnosed eczema.  Tr. 279.  At a follow-up visit on August 27 she had a normal gait, mood, and affect.  Tr. 287. She had hyperkeratosis in her hands. Tr. 278.  Dr. Mahlies assessed hypertension, asthma, vitamin D deficiency, seasonal allergic rhinitis, back pain, eczema, tobacco use disorder, and recurrent major

3

depressive disorder. Tr. 278-279.

On October 15, 2019, Bogucki had a mental health appointment. Tr. 393. She reported being "a little discouraged about several stressors" but she "felt much better" on her new medication. Tr. 394. Upon exam, she had intact memory, attention, and concentration. Tr. 395. She was diagnosed with bipolar II disorder, borderline personality disorder, unspecified anxiety disorder, alcohol use disorder, severe, and cocaine use disorder in sustained remission. Tr. 395.

On November 5, 2019, Bogucki saw Dr. Mahlies for a follow-up. Tr. 408. She endorsed heartburn, joint pain, an eczema flare that began three weeks prior, slight dizziness, and polydipsia. Tr. 408. Upon exam she had a normal gait, mood, and affect. Tr. 409. She had extensive skin lesions, cracked skin, and swelling fingers bilaterally with limited range of motion in her interphalangeal joints. Tr. 409.

On January 7 and 21, 2020, Bogucki had counseling appointments and appeared significantly more depressed and was tearful. Tr. 427, 436. At those visits she also had intact memory, attention, and concentration upon exam. Tr. 428, 437.

On May 29, 2020, Bogucki went to the emergency room after twisting her right knee the week before and experiencing knee and leg pain. Tr. 478-479. She reported that her knee kept giving out on her and it felt like there was a bulge in it. Tr. 479. Upon exam she had a slightly decreased range of motion with flexion of her right knee, was ambulatory with a slight limp, and she had 4/5 strength. Tr. 480. An x-ray of her right knee showed bicompartmental osteophytes and prepatellar soft tissue swelling with a small joint effusion. Tr. 481. She was prescribed a walker for one week for a "small effusion." Tr. 481.

On June 9, 2020, Bogucki had an appointment with the Orthopaedic Surgery Clinic for right knee pain. Tr. 502. Upon exam of her right leg she had 5/5 motor strength, decreased range of motion,

4

and tenderness to palpation around her knee.  Tr. 505.  She was given a knee injection and ordered to do physical therapy.  Tr. 506.

On October 28, 2020, Dr. Mahlies completed a medical source statement on Bogucki's behalf. Tr. 512-515.  Dr. Mahlies opined that Bogucki could stand for 45 minutes at a time; sit, stand, or walk for less than two hours in a workday; needed to walk around for five minutes at a time every 90 minutes; must elevate her legs for half the workday; and required an assistive device for both walking and standing.  Tr. 513–514.  She could rarely lift 10 pounds.  Tr. 514.  She could use her hands to grasp, turn, or twist objects for 25% of the workday, use her fingers for fine manipulation for 10% of the workday, and use her arms to reach in front of her or overhead 80% of the workday.  Tr. 514.  She would be off task 25% percent or more of the workday, was incapable of low stress work, and would be absent more than four days per month.  Tr. 514–515.

## C.  State Agency Reports

Physical: On December 15, 2019, Rohini Mendonca, M.D., reviewed Bogucki's records and, regarding her RFC, found that she could perform a full range of medium work.  Tr. 75.

On May 18, 2020, Dr. Abraham Mikalov, M.D., reviewed Bogucki's records and found that she could perform light work except that she could frequently stoop, kneel, crouch, crawl, balance, and climb ramps and stairs; could never climb ladders, ropes, or scaffolds; and must avoid unprotective heights.  Tr. 86–87.

Mental: On December 14, 2019, Maurice Prout, Ph.D., reviewed Bogucki's records and found that she could understand and remember simple and moderately complex tasks; sustain concentration, persistence, and pace when tasks are simple to moderately detailed and of short to moderate duration; engage in occasional superficial social interactions; and she would have difficulty responding to changes in the work setting.  Tr. 76–78.

5

On May 18, 2020, Irma Johnston, Psy.D., reviewed Bogucki's records and found that she could understand and remember simple and moderately complex tasks; sustain concentration, persistence, and pace when tasks are simple to moderately detailed and of short to moderate duration; adapt to settings where there were no fast-paced demands; engage in occasional, superficial social interactions; and adapt to infrequent work changes.  Tr. 87–89.

**D.    Hearing Testimony**

During the November 16, 2020, telephonic hearing, Bogucki testified to the following:

- When asked why she was disabled, she described her medical history, including being born with a disease for which she has been treated with steroids.  Tr. 38.  But her voice was inaudible and much of her answer is not contained in the transcript.  Tr. 38.  She nearly died of Covid, was depressed, and thought of suicide at times.  Tr. 38.  She could not concentrate and was in and out of the hospital.  Tr. 38.  She had limited use of her hands; some of that testimony was inaudible. Tr. 38.  She can't cut her own meat and can't hold tops a lot.  Tr. 38.  She saw a dermatologist.  Tr. 38.  She depends on a cane and needs a double knee replacement.  Tr. 38.

- With respect to her hands, she stated that she cannot use them much and that they crack and bleed.  Tr. 39.  She gets blisters from dry skin.  Tr. 39.  She has been hospitalized and has been treated for staph and MRSA.  Tr. 39.  She has missed work in the past due to the severity of her hands.  Tr. 39.  They swell and she can't wrap her fingers around a pen.  Tr. 43.  She has lost feeling in her hands.  Tr. 43.  She felt like things were crawling under her skin.  Tr. 43-44.  She can't bend them all the way and her fingers curve over.  Tr. 44.  Her other descriptions were not picked up by the audio recording.  Tr. 44.  When asked if she has eczema anywhere else on her body, she stated that it flares up, she gets rashes, and she breaks out in hives.  Tr. 44.  She has been on oral steroids for a long time and she has gotten steroid shots that give her problems.  Tr. 44.  The recording did not pick up her description of the treatment she has had and the problems from that treatment.  Tr. 44.

- Her sobriety date is January 22, 2019, and she attends AA meetings.  Tr. 39.  She lives in a homeless shelter.  Tr. 40.  She assigns housekeeping tasks to people, checks inventory, and makes sure people complete their assigned tasks.  Tr. 40-41. She does not do housekeeping chores herself due to her hands and because she has a cane.  Tr. 40.  She got the cane herself; she had been prescribed a walker from MetroHealth but after the swelling went down she had to get a cane for balance.  Tr. 40.  She is unsteady and gets dizzy for a few minutes when she first stands up.  Tr. 40.  She uses the cane all the time.  Tr. 41.

- She has not had a lot of treatment for her hands lately.  Tr. 42.  When asked why, much of her testimony was inaudible, but she discussed problems with insurance, having to switch insurance, having to first see a primary care physician, and that physician not accepting new

patients.  Tr. 42.  She estimated that the last time she saw a dermatologist was four months ago and she was given a prescription ointment.  Tr. 42-43.

- When asked about her knee replacements, she stated that they were not scheduled yet.  Tr. 44.  She has to get steroid shots and go to physical therapy, which she could not do because of the coronavirus.  Tr. 44-45.  She elevates her legs higher than her heart about 70% of the day.  Tr. 45.  She estimated that she could stand for about 5 minutes with her cane and doesn't trust herself to stand without it.  Tr. 46.

- She felt suicidal at times.  Tr. 47.  She goes to therapy and some days that helps.  Tr. 47.  When asked to describe her problems with her concentration, she stated that she could pay attention for a couple minutes and had problems following conversations.  Tr. 47.  Almost every day she feels like she doesn't want to come out of her room; there are about 40 people in the shelter she lives in and she felt nervous and paranoid around other people.  Tr. 48.

The VE stated that Bogucki's past relevant work were composite jobs of cook/cashier and desk clerk/cleaner/groundskeeper.  Tr. 49.  The ALJ asked the VE whether a hypothetical individual with the same age, education and work experience as Bogucki could perform work if the individual had the limitations assessed in the ALJ's RFC determination, described below.  Tr. 49-51.  The VE answered that such an individual could not perform Bogucki's past work but could perform the following representative jobs in the economy: routing clerk, marker, office helper.  Tr. 52.

### III. STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§

7

404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or

mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not

performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve

months, and the impairment, or combination of impairments, meets or medically equals a required listing

under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age,

education or work experience.  *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's

impairment or combination of impairments does not prevent her from doing her past relevant work, the

claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step,

even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists

in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§

404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since September 13, 2019, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: depressive, bipolar, and related disorders; personality disorders; substance addi[c]tion disorders, drugs and alcohol; essential hypertension; asthma; obesity; and eczema of the bilateral hands (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can frequently stoop, kneel, crouch, and crawl; must avoid concentrated exposure to smokes, fumes, pollutants, and dust; must avoid entirely exposure to unprotected heights and dangerous machinery; cannot perform complex tasks but can perform simple, routine tasks ("simple, routine tasks" means the claimant possesses the basic mental aptitude to meet the demands of competitive, remunerative unskilled work

8

including the abilities to, on a sustained basis, understand, carry out, and remember simple work instructions); can respond appropriately to supervision, coworkers, and usual work situations in addition to dealing with changes in routine work settings; can focus attention on simple or routine work activities for at least two hours at a time and stay on task as a sustained rate such as initiating and performing a task that they understand and know how to do; can work at an appropriate and consistent pace and complete tasks in a timely manner; can do only low-stress work (meaning no high production quotas or piece-rate work); and can have occasional, superficial interactions with the public and coworkers (meaning limited to speaking, signaling, taking instructions, asking questions, and similar contact with no arbitration, negotiation, confrontation supervision, or commercial driving.

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on February **, 1971 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, from September 13, 2019, through the date of this decision (20 CFR 416.920(g)).

Tr. 16-28.

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "more than a scintilla of evidence but less

9

than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir.2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the

record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996)); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

## VI. ANALYSIS

Bogucki challenges the ALJ's evaluation of her hand eczema, her statements regarding her symptoms, and the opinion of her physician, Dr. Mahlies.  For the reasons described below, the undersigned finds that the ALJ's decision contains numerous errors relevant to those issues.  As a result, the undersigned finds that the ALJ's decision is not supported by substantial evidence and/or does not contain enough information for the undersigned to review.  Accordingly, the undersigned finds that the ALJ's decision must be reversed.

*Dr. Mahlies' notes and opinion*.  The ALJ misstated the evidence he summarized from Dr. Mahlies' treatment notes.  He stated that Dr. Mahlies found that Bogucki had trace edema in her bilateral hands in December 2018 and January 2019.  Tr. 22 (citing 2F/8, 2F/6).  But Bogucki did not have edema in her hands on those days, she had edema in her legs.  See Tr. 281, 283-284 (Dr. Mahlies's treatment notes indicating Bogucki's Musculoskeletal exam showed edema in her "bilateral LE," i.e., bilateral lower extremities).  The ALJ made the same mistake when reciting Dr. Mahlies' May 2019 treatment note.  Tr. 23 (citing 2F/5, Tr. 280).[3]  The ALJ cited another treatment note from Dr. Mahlies in which Bogucki had "plus one-or-two edema" (Tr. 408-409) but the ALJ did not acknowledge that that

---

[3] The ALJ refers to an April 14, 2019 treatment note but the treatment note he cited is from May 14, 2019.  The undersigned did not locate an April 14, 2019 treatment note in the record.

edema was in her legs. Tr. 23. Bogucki's leg edema is important because she testified that she has to elevate her legs above her heart for most of the day (Tr. 45-46) and Dr. Mahlies stated in his opinion that Bogucki would have to elevate her legs 45 degrees for 50% of a workday due to leg edema (Tr. 513-514). The ALJ rejected Dr. Mahlies' opinion because it was "not supported" in general and, regarding Bogucki's need to elevate her legs, because Dr. Mahlies did not explain why Bogucki needed to elevate her legs. Tr. 24. Both of those statements are wrong—the record supports Bogucki's history of leg edema and Dr. Mahlies stated that Bogucki needed to elevate her legs due to edema.

The ALJ also mischaracterized Dr. Mahlies' reasons he provided in his opinion. The ALJ wrote that Dr. Mahlies did not provide a relevant explanation for his assertion that Bogucki needed a cane (Tr. 24) but Dr. Mahlies stated that Bogucki needed a cane due to pain and imbalance (Tr. 514). The ALJ discounted Dr. Mahlies' opinion that Bogucki would be absent from work more than four days a month, stating that Dr. Mahlies' reasons—Bogucki's reduced range of motion in her hands, fingers and shoulders—did not support that restriction. Tr. 24-25. But the ALJ ignored that Dr. Mahlies had also cited her pain and swelling as reasons why she would miss work. Tr. 512, 514. The ALJ wrote that Dr. Mahlies did not specify the degree to which Bogucki's hand and finger range of motion were limited. Tr. 24. That is true, but the form didn't ask him to. Finally, the ALJ recited, again, an imprecise summary of the evidence of record (Tr. 25) and did not provide any conclusions he may have drawn from that evidence. For all those reasons, the undersigned finds that the ALJ's evaluation of Dr. Mahlies' opinion is not supported by substantial evidence.

*Eczema*. The ALJ found that Bogucki's bilateral hand eczema was a severe impairment (Tr. 18) but did not explain how he accounted for that impairment in his RFC. He mentioned her eczema at step three when he stated that she did not meet the criteria for Listing 8.05, Dermatitis (Tr. 19) but provided no explanation for his conclusion, at that step or anywhere else in his decision. *See Brock v. Colvin*, 125

12

F. Supp. 3d 671, 673 (N.D. Ohio 2015) (reversing because "the ALJ's unexplained conclusion is insufficient to permit meaningful judicial review of her determination Brock's impairments do not meet or medically equal Listing 1.04," citing cases).  The ALJ recounted Bogucki's testimony, in which she stated that she has limited use of her hands and eczema flare-ups (Tr. 22), but he did not evaluate her statements regarding her symptoms anywhere in his opinion.[4]  That, too, is reversible error.  *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015) (the ALJ's failure to provide an explanation for assessing the claimant's statements concerning her symptoms anywhere in her decision was reversible error, citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007)).  The ALJ commented that Bogucki "explained that she did not have a lot of treatment for her hands due to medical insurance issues" (Tr. 22) but did not state how, or whether, her lack of treatment regarding her hands factored into his decision.  Thus, ALJ also erred because he did not include enough information in his decision regarding Bogucki's hand eczema for the undersigned to review whether his decision is supported by substantial evidence.

*Miscellaneous*.  At step three, when discussing Bogucki's mental impairments, the ALJ commented four times, "Notes showed that the claimant acted as a full-time babysitter for her daughter." Tr. 20.  That treatment note is from a visit Bogucki had with her mental health provider on October 15, 2019, in which she stated that she was discouraged because, among other things, "her daughter is using her as a full time babysitter because she lives with the daughter and her eczema has been exacerbated." Tr. 394.  Upon remand, the ALJ will have an opportunity to reconsider Bogucki's eczema, including her statements regarding the severity of it and any triggers.  In addition, relevant portions of the hearing transcript were not transcribed because Bogucki's answers were inaudible.  The Agency is to take care,

---

[4] Defendant asserts that the ALJ considered Bogucki's subjective complaints of symptoms and cites portions of the ALJ's decision in which he recounted evidence in the record.  Doc. No. 9, pp. 27-28.  The ALJ's recitation of the evidence is not an evaluation of Bogucki's symptoms.  Even if a generous reading of the ALJ's recitation of her mental impairments could, arguably, suffice as an evaluation of her mental health symptoms, the same cannot be said for the ALJ's limited (and inaccurate) discussion of her physical impairments.

13

on remand, to ensure that the hearing is conducted in a manner that yields a transcript capable of review.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED and REMANDED for further proceedings consistent with this opinion.

Date: August 26, 2022                                  _s/ Jonathan Greenberg_
                                                       Jonathan D. Greenberg
                                                       United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  _See Berkshire v. Beauvais_, 928 F.3d 520, 530-531 (6th Cir. 2019).**